UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KESHA CAMERON,<br><br>                    Plaintiff,<br><br>     – v. –<br><br>CARDIFF BAY CENTER, LLC D/B/A PENINSULA NURSING AND REHABILITATION CENTER, ALEX SOLOVEY, ELENA ZARETSKY, AND MICHAEL SCHRIEBER,<br><br>                    Defendants. | 20-cv- _____<br><br><br><br>COMPLAINT |

Plaintiff Kesha Cameron ("Cameron"), by her attorneys, Cary Kane LLP, complains of Defendants as follows:

## NATURE OF THIS ACTION

1.      Cameron brings this action to remedy wage violations under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law, §§ 190 *et seq.*, §§ 650 *et seq*. ("NYLL").

2.      Cameron seeks declaratory and injunctive relief; unpaid wages including overtime wages; statutory liquidated damages; pre-judgment interest; reasonable attorney fees and costs; and all other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Cameron's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      The Court has supplemental jurisdiction over Cameron's NYLL claims pursuant to 42 U.S.C. § 1367(a) and NYLL §§ 198, 663 because those claims form part of the same case and controversy with Cameron's federal claims.

5.      Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within Queens County and Nassau County, New York.

6.      Venue is also proper within this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Cardiff Bay Center, LLC is a New York domestic business corporation that maintains its principal offices in Nassau County and because, upon information and belief, all Defendants are residents of the State of New York.

## **PARTIES**

7.      Plaintiff Kesha Cameron is an individual who resides Queens County, New York.  At all times relevant to this action, Cameron was a non-exempt employee of Defendants.

8.      Defendant Cardiff Bay Center, LLC, which does business as Peninsula Nursing and Rehabilitation Center, (hereinafter "Peninsula" or the "Company") is a for-profit limited liability corporation organized under the laws of New York.

9.      Peninsula maintains its principal office at 225 Crossways Park Drive in Woodbury, New York.

10.      Cardiff operates Peninsula as a long-term care and nursing facility in Far Rockaway, New York.

11.      At all times relevant to this action, Peninsula was Cameron's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

12.     Upon information and belief, Defendant Alex Solovey is a member and/or owner of Peninsula.

13.     Solovey oversees and manages Peninsula's operations and business and, upon information and belief, (i) sets the Company's hiring and payroll policies, (ii) discusses hiring and payroll questions and decisions with Defendant Michael Schrieber and/or Defendant Elena Zaretsky, and (iii) has power to direct those decisions.  His place of business is located at 225 Crossways Park Drive in Woodbury, New York.

14.     At all relevant times, Defendant Solovey was Cameron's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

15.     Defendant Michael Schrieber ("Schrieber") is the Regional Administrator for Peninsula. As the Regional Administrator, upon information and belief, Schrieber oversees the day-to-day operations at the Peninsula facility, makes hiring and firing decisions in consultation with Zaretsky and/or Solovey, sets employee pay for non-unionized employees in consultation with Zaretsky and/or Solovey, and is one of the ultimate decision-makers for all personnel matters at the facility. His place of business is located at 225 Crossways Park Drive in Woodbury, New York.

16.     At all relevant times, Defendant Schrieber was Cameron's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

17.     Defendant Elena Zaretsky ("Zaretsky") is Peninsula's Regional Human Resources Director. In that position, upon information and belief, Zaretsky oversees the day-to-day operations at the Peninsula facility, makes hiring and firing decisions in consultation with Schrieber and/or Solovey, sets employee pay for non-unionized employees in consultation with Schrieber and/or Solovey, and is one of the ultimate

decision-makers for all personnel matters at the facility. Her place of business is located at 225 Crossways Park Drive in Woodbury, New York.

18.     At all relevant times, Defendant Zaretsky was Cameron's employer within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190, 651.

19.     Defendants Solovey, Schrieber, and Zaretsky were the three primary decision-makers over Cameron's employment at the Peninsula facility.

## FACTUAL ALLEGATIONS

20.     Peninsula provides the following non-exhaustive list of services to its residents or patients: 24-hour skilled nursing care; dialysis; short-term rehabilitation; long term residential care; an assortment of therapies (occupational, physical, speech, respiratory); post-operative care; and so on.

21.     The Peninsula building has four floors.

22.     Peninsula has 200 beds, a dialysis center with sixteen stations, and an adult daycare center.

23.     The top three floors contain the residences for long-term care residents and rehabilitation residents.

24.     Plaintiff Cameron commenced employment with Defendants on September 30, 2019.

25.     Cameron's position with Defendants when she started was nursing staff coordinator, a non-exempt position, which paid at a rate of $29.12 per hour.

26.     Upon her commencement of employment, Defendants provided Cameron with a wage notice that specified she was a non-exempt employee and entitled to overtime pay.

27.     About a week after Cameron started, Cameron assumed additional responsibilities after Defendants terminated Peninsula's human resources coordinator.

28.     In December 2019, and after she assumed additional responsibilities, Cameron received a wage raise increase to $31.79 per hour.

29.     After Cameron assumed these additional responsibilities, her title changed from nursing staff coordinator/human resources.

30.     At the time of her wage increase, Defendants provided Cameron a new wage notice with her new overtime rate, and which also specified she was a non-exempt employee and entitled to overtime pay.

31.     During her employment by Defendants, Cameron was not a supervisor or manager at the Peninsula facility.

32.     During her employment by Defendants, Cameron was not involved in hiring decisions, firing decisions, or disciplinary actions of Peninsula employees.

33.     During her employment by Defendants, Cameron attended meetings with Peninsula management and unionized employees but only took notes. Cameron did not advise management and was not allowed to speak during the meetings.

34.     During her employment by Defendants, Cameron worked under the direction of the nursing department for nursing-related matters and under Zaretsky.

35.     During her employment by Defendants, Cameron was not a department head during her employment, nor attended any department head meetings during her employment.

36.     During her employment by Defendants, Cameron was a full-time employee and her schedule was largely consistent. Cameron worked Monday through Friday each week.

37.     Defendants also required Cameron to work on weekends, which Cameron did on at least three occasions.

38.     After working 40 hours between Monday and Friday, for the hours that Cameron worked on weekends, Defendants did not pay Cameron any overtime premium for those hours (*i.e.*, Defendants paid Cameron for hours worked on the weekends at her regular, straight time rate only).

39.     During the entirety of Cameron's employment, Peninsula did not pay or calculate overtime owed to Cameron based on the "8 or 80" method.

40.     Although Cameron was a non-exempt employee, she worked over 50 hours per week until COVID-19 hit New York State.

41.     Once COVID-19 hit New York State, and given that Peninsula is a nursing home, Cameron's hours at work increased.

42.     From about late February 2020 to June 22, 2020, Cameron was working about 55 hours per week.

43.     During Cameron's employment, Defendants did not pay Cameron for hours worked over 40 in a week.

44.     Cameron clocked in and clocked out every shift using a biometric system at the Peninsula facility.

45.     Defendants paid Cameron on a bi-weekly basis.

46.     Despite using Peninsula's biometric timekeeping system, Defendants consistently undercounted Cameron's hours worked as reflected on Cameron's paystubs.

47.     Defendants consistently paid Cameron for 67.5 hours worked over a two-week period.

48.     Defendants also consistently paid Cameron for 75 hours worked over a two-week period.

49.     For the duration of Cameron's employment, Defendants did not state Cameron's overtime rate, or overtime hours worked, on Cameron's wage statements.

50.     For the duration of her employment, Cameron was so busy at work that she did not typically take a lunch break.

51.     Cameron did not clock out when she took a lunch break because she continued to work while eating lunch at her desk.

52.     Defendant Zaretsky told Cameron to take a "working lunch" and that "no one really takes lunch breaks," referring to Peninsula's employees.

53.     Notwithstanding, Defendants routinely deducted a 30 minute lunch break for each day of work from Cameron's pay.

54.     Thus, on a typical workday pre-COVID-19, Cameron was uncompensated for two hours of work, and on a typical workweek, was uncompensated for ten hours of work.

55.     After COVID-19 hit New York State, Cameron was uncompensated for about 3.6 hours of work per day, and on a typical workweek, was uncompensated for eighteen hours of work.

56.     Cameron repeatedly raised concerns with Defendant Schrieber over Defendants failure to pay her for overtime.

57.     Defendant Schrieber repeatedly told Cameron that he'd "look into it."

58.     Cameron complained to Defendant Zaretsky that she wasn't paid during her lunch breaks. Defendant Zaretsky laughed off Cameron's complaints.

59.     Defendants Schrieber and Zaretsky failed to follow through in ensuring Defendants paid Cameron her overtime wages. Cameron received "the run around" from Defendants Schrieber and Zaretsky.

60.     Notwithstanding Defendants' failure to properly pay Cameron, Cameron never once called out sick or skipped work after COVID-19 hit New York State.

61.     Cameron must be compensated for unpaid hours worked under the FLSA and NYLL when Cameron worked through lunch.

62.     Defendants knew that Cameron worked through lunch and knew that time was uncompensated.

63.     On June 22, 2020, Cameron gave two-weeks' notice to Defendants of her resignation.

64.     Even though Cameron provided two-weeks' notice to ensure an orderly transition, Defendant Zaretsky and Peninsula CFO Arthur Cooperberg told her that June 22 would be her last day of work.

65.     June 22, 2020 was in fact Cameron's last day of work at Peninsula.

66.     Upon information and belief, Defendants' violations of the FLSA and NYLL were willful.

67.     Upon information and belief, Peninsula is a sophisticated business enterprise and has done business in New York State continuously for many years with Defendant Alex Solovey at its head.

68.     Upon information and belief, Peninsula's annual revenue far exceeds $500,000.00.

## AS AND FOR A FIRST CLAIM
### (Failure to Pay Overtime Wage – FLSA)

69.     Plaintiff repeats and re-alleges the allegations made hereinbefore.

70.     At all relevant times, Defendants failed to pay Plaintiff at the statutorily required overtime rate of one and one half times her regular rate of pay for all hours worked over 40 hours in a week, in violation of 29 U.S.C. § 207.

71.     Upon information and belief, said violations are willful within the meaning of 29 U.S.C. § 255(a).

72.     Plaintiff suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

## AS AND FOR A SECOND CLAIM
### (Failure to Pay Regular "Gap-Time" Wage for All Hours Worked – NYLL)

73.     Plaintiff repeats and re-alleges the allegations made hereinbefore.

74.     At all relevant times, Defendants did not pay Plaintiff for all hours Plaintiff worked, which gives rise to a claim for "gap time" pay under NYLL §§ 198(1-a) and 663(1) as interpreted by the courts

75.     Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their actions complied with the law within the meaning of NYLL §§ 198 and 663.

76.     Plaintiff suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

## AS AND FOR A THIRD CLAIM
### (Failure to Pay Overtime Wage – NYLL)

77.     Plaintiff repeats and re-alleges the allegations made hereinbefore.

78.     At all relevant times, Defendants failed to pay Plaintiff the statutorily required overtime wage at one and one half times their regular rate of pay for all hours worked over 40 hours in a week, in violation of NYLL § 652 and N.Y. Comp. Codes, Rules & Regs., tit. 12, § 142-2.2.

79.     Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their actions complied with the law within the meaning of NYLL §§ 198 and 663.

80.     Plaintiff suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally for said damages.

## AS AND FOR A FOURTH CLAIM
### (Failure to Provide Wage Statement – NYLL)

81.     Plaintiff repeats and re-alleges the allegations made hereinbefore.

82.     Throughout Plaintiff's employment, Defendants failed to provide wage statements to Plaintiff that set forth the information required by NYLL § 195(3), and therefore violated NYLL § 195(3).

83.     Upon information and belief, Defendants had no reasonable, good-faith basis to believe that their failure and/or refusal to do so complied with the law within the meaning of NYLL §§ 198 and 663.

84.     Plaintiff suffered monetary damages as a result of Defendants' acts and Defendants are jointly and severally liable for said damages.

## JURY DEMAND

85.     Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREAS** no previous application for relief has been made for the relief requested herein, Plaintiff respectfully requests that this Court enter a judgment:

(a)     declaring that the acts and practices complained of herein are in violation of the FLSA and NYLL;

(b)     declaring that the acts and practices complained of herein are willful violations and without a reasonable, good-faith basis within the meaning of 29 U.S.C. § 255(a) and NYLL §§ 198, 663;

(c)     permanently enjoining and restraining the violations alleged herein, pursuant to 29 U.S.C. § 217 and the NYLL;

(d)     awarding Plaintiff all unpaid overtime wages due as a consequence of Defendants' violations of the FLSA and NYLL;

(e)     awarding Plaintiff all unpaid "gap time" wages for hours worked and which were uncompensated as a consequence of Defendants' violations of the NYLL;

(f)     awarding Plaintiff all allowable liquidated damages as provided for in 29 U.S.C. § 216(b);

(g)     awarding Plaintiff all allowable liquidated damages as provided for in NYLL §§ 198, 663;

(h)     awarding Plaintiff all allowable pre-judgment interest as provided for by NYLL §§ 198, 663;

(i)     awarding Plaintiff the costs of this action together with his reasonable attorney fees, as provided in 29 U.S.C. § 216(b) and NYLL §§ 198, 663;

(j)     awarding Plaintiff all allowable post-judgment interest as provided for by 28 U.S.C. § 1961(a);

(k)     awarding Plaintiff all damages for Defendants' violation of NYLL § 195(3); and

(l)     granting such other and further relief to Plaintiff as this Court deems appropriate.

Dated:   August 17, 2020
         New York, New York

                                CARY KANE LLP


                                By: /s/Christopher S. Baluzy____
                                    Christopher S. Baluzy

                                1350 Broadway, Suite 2220
                                New York, NY 10018
                                T: 212-871-0535
                                F: 646-599-9575
                                cbaluzy@carykane.com
                                *Attorneys for Plaintiff Kesha Cameron*